GARDNER v. COHEN et al.

(Supreme Court, Appellate Division, First Department.   June 10, 1898.)

WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENT.

> One Smith, the owner of certain real property, executed two mortgages thereon,—one to the plaintiff, and the other to the defendant's testator. In an action brought by the plaintiff, he alleged an agreement by which, in consideration of his subordinating his mortgage to that held by defendant's testator, the latter agreed to pay such sums as might thereafter become due under the mortgage thus subordinated; the agreement as alleged being of such a character that plaintiff's success in the suit would relieve Smith, the mortgagor, from liability upon his mortgage to the plaintiff. *Held*, that Smith was so far interested in the event of the action that he was not competent, under Code Civ. Proc. § 829, to testify to conversations and transactions between himself and defendant's testator.

Appeal from special term.

Action by Charles E. Gardner against Abraham Cohen and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before BARRETT, McLAUGHLIN, RUMSEY, and O'BRIEN, JJ.

M. E. Duffy, for appellant.

W. H. Hamilton, for respondents.

O'BRIEN, J.   All the facts and questions at issue are fully presented in the opinion of the learned judge at special term, and would require no further comment, were it not that our attention is called to an error into which the trial judge inadvertently fell, in the statement that:

"Foreclosure suits were commenced by Lipman and Kind upon the mortgages for $8,000 and $38,320.32, and to these foreclosure suits the plaintiff was made a party defendant. These suits were not pressed, and judgments were not rendered in them until August 10, 1891."

The plaintiff, as stated, was made a party; but it appears that the foreclosure judgments were entered on March 30, and the property sold thereunder on August 10, 1891.   The statement that the judgments were entered on the latter date, instead of that the property was at that time sold under such judgments, however, could have no material bearing upon the real question at issue, which was as to whether Lipman entered into an agreement with the plaintiff by which he personally agreed to pay for certain trim, consisting of doors, wainscoting, interior woodwork, etc., used on the five buildings then in course of construction.   It cannot be seriously disputed that the agreement in writing between the plaintiff and Lipman, by which the former agreed to subordinate his mortgage of $9,000 to the new mortgage of $14,000 which was to be given to Lipman for money to be advanced towards completing the houses, as well as the written agreement between Lipman and Smith, who, as owner of the property, had originally undertaken to erect the buildings, was made in March.   It is clear that, if the oral agreement relied upon by the plaintiff was prior to or contemporaneous with the written agree-

ments, the same would be merged, and testimony as to any such oral agreement would have been incompetent. It was incumbent on the plaintiff, therefore, to show that for a sufficient consideration, and as a substitute for the written agreements, the one upon which the plaintiff relies was subsequently made, by which Lipman personally obligated himself to pay for the trim. Recognizing that, in order that it should be available as a foundation for a cause of action, the oral agreement should be subsequent, the plaintiff sought to establish that it was entered into with Lipman in April, the month after the written agreements bear date. The consideration for the new promise by Lipman is stated to be the plaintiff's covenant to subordinate his mortgage of $9,000 to the new $14,000 mortgage. This, as we have shown, however, was embraced within the March written agreement. It is true that several witnesses responded in the affirmative to leading questions of the plaintiff's counsel as to whether they did not remember a conversation in April between the plaintiff and Lipman relating to the payment by the latter for the trim work. But such testimony was considerably shaken on cross-examination, when all the witnesses referred it 'to the time when conversations and negotiations were going on in reference to the placing of the $14,000 mortgage on the property, which was concededly in March, at the time the written agreements were made. The only witness to whom the date was not suggested by the question asked was Hutton, who said: "It was in April, 1891, some time. I couldn't exactly tell you the date." It appears that when the troubles and difficulties arose with respect to the property the imminence or pendency of foreclosure proceedings brought the parties together to determine what was best to be done; and considering that several years had elapsed between the date of the interviews and negotiations that were thereupon had, and the time when the witnesses were testifying concerning them upon the trial, it is not at all remarkable that their memories should be confused, or that they should fail to recall the sequence of events, or the precise dates of the several occurrences. All agree that whatever arrangements were made were because of the fear of the foreclosure of the first mortgage held by Durant, and of the pendency of the Lipman foreclosures; and it is difficult to see what inference could be drawn from the consideration whether the judgments in such foreclosure suits had or had not been entered. The efforts of all were apparently directed to preventing a sale under the foreclosure suits, and to that end it was proposed to have additional money advanced, so that the houses could be completed, and a permanent loan secured, which it was hoped would result in the payment of all the contractors and material men. The foreclosure suits not having at that time eventuated in a sale, the exact stage reached therein was not regarded as very material, as shown by the testimony of all the witnesses, who speak of them as foreclosure suits pending. The inadvertent statement in the opinion, therefore, that they were pending, when in point of fact judgments had been entered, or that judgments were not rendered until August 10, 1891, which was in fact the date of sale, cannot be said to have in any way affected the conclusion reached by the trial judge, as shown by his clear summary

of the other facts and issues in the case. As we have suggested, the burden was on the plaintiff of establishing an oral agreement upon sufficient consideration, or as a substitute for the written agreement. This burden was sought to be sustained by the unsatisfactory evidence of witnesses as to conversations heard years before, the precise date of which could not be fixed, and which were as consistent with the conclusion that they finally eventuated in the written agreement as that they were proof of a subsequent oral agreement which concededly contradicts all the documentary evidence. These considerations, together with the additional fact that it was sought to charge the estate with a claim of many thousand dollars, which, so far as the record discloses, the plaintiff withheld for over three years without demanding it, during Lipman's lifetime, led the trial judge to conclude that the plaintiff had not supported the burden placed upon him of establishing his cause of action. It being, therefore, peculiarly a question of fact, and there being no room for the argument that the conclusion reached was clearly against the weight of evidence, we should not disturb the finding made by the trial judge.

Certain exceptions were taken to rulings upon evidence, most of them excluding conversations and transactions between Smith and Lipman, deceased, upon the ground that they were not competent, under section 829 of the Code. These rulings, we think, were proper, for the reason that, if the plaintiff had succeeded, Smith would have been relieved of the payment of the bond and mortgage given by him to the plaintiff, as well as from paying for the materials furnished under his contract, and would thus have been benefited; and to that extent he was interested in the event of the action.

The defendants offered in evidence, under objection, the agreement between Smith and the plaintiff; and it is insisted that the exception taken to the ruling permitting it warrants a reversal, upon the ground that such contract could have no bearing upon the liability of Lipman upon a separate and different agreement. In this argument the appellant overlooks the fact that the question at issue was with whom the plaintiff's contract to furnish the trim was made; and, in answer to testimony directed to showing that it was Lipman, it was certainly competent to introduce the written agreement between the plaintiff and Smith, who, as the original owner of the property, had given both the plaintiff and Lipman their mortgages; and we can see no force in the suggestion that it was incompetent to meet the plaintiff's proof by showing that by the terms of the written agreement the plaintiff had contracted with Smith.

We think, therefore, that the judgment appealed from should be affirmed, with costs. All concur.